# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| RODNEY D. AVERHART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:21-cv-01652-CLM-NAD |
| ) | |
| WARDEN GIVENS, et al., ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION

Plaintiff Rodney D. Averhart filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights while incarcerated at the Donaldson Correctional Facility.  Doc. 4.  Plaintiff Averhart names the following Defendants:  Warden Givens, Warden Morgan, Warden Peters, Captain Scott, Captain Joshua, Sergeant Edmond, and Officer Dwight Williams.  Doc. 4 at 11.

Averhart alleges that his Eighth and Fourteenth Amendment rights were violated because he was placed in a cell with another inmate in "unsafe conditions" and experienced "inadequate living conditions," and because he was injured in an inmate assault.  Doc. 4 at 14–15.  Averhart seeks money damages, as well as declaratory and injunctive relief.  Doc. 4 at 15.  Averhart names all Defendants in their individual and official capacities.  Doc. 4 at 2–3.

Consistent with the usual practices of this court and 28 U.S.C. § 636(b)(1),

1

the amended complaint was referred to the undersigned for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991); N.D. Ala. Local Rule 72.1. For the reasons explained below, Averhart's Eighth Amendment claims against Officer Williams and Captain Joshua should proceed (at least to the special-report stage). But the court should dismiss the remainder of Averhart's claims pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2) for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees. The court must dismiss a complaint (or any portion of a complaint) that it finds frivolous or malicious, that seeks money damages from a defendant who is immune from monetary relief, or that fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(a). In applying this standard, the court can *sua sponte* dismiss a prisoner's complaint—prior to service on the defendant. *See id.*; 28 U.S.C. § 1915(e)(2)(B).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a court can dismiss a claim as "frivolous where it lacks an arguable basis" in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where a defendant is immune from suit, or where the claim seeks to enforce a legal right that clearly does

not exist. *Id.* at 327; *see* 28 U.S.C. § 1915A(b)(2); 28 U.S.C. § 1915(e)(2)(B)(iii).

In addition, under § 1915A(b)(1) and § 1915(e)(2)(B)(ii), the court can dismiss for failure to state a claim upon which relief can be granted. The standard for failure to state a claim under § 1915A(b)(1) is the same as it is under Federal Rule of Civil Procedure 12(b)(6). *See Jones v. Bock*, 549 U.S. 199, 215 (2007).

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (quoting Fed. R. Civ. P. 8(a)) (alteration in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

While Federal Rule of Civil Procedure 8 requires only a "short and plain statement of the claim" (*id.*), the United States Supreme Court has instructed that Rule 8 requires more than "an unadorned, the-defendant-unlawfully-harmed-me" allegation. *Iqbal*, 556 U.S. at 678.

In this regard, the court liberally construes a *pro se* pleading. *See, e.g.*, *Jones v. Florida Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015) (the court should

hold a *pro se* pleading to "a less stringent standard than a pleading drafted by an attorney"). Nevertheless, a *pro se* pleading must include sufficient factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (quotation marks omitted).

## FACTUAL ALLEGATIONS

As noted above, Plaintiff Averhart alleges violations of his Eighth[1] and Fourteenth Amendment rights at Donaldson. Doc. 4 at 11–15. Averhart bases his claims on the following allegations:

On or around February 19, 2021, Averhart was placed in segregation. Doc. 4 at 13. The segregation cells had no lights, no heat, poor ventilation, and beds consisting of thin mattresses on concrete blocks. Doc. 4 at 13. The food was "unfit to be served" because of unsanitary trays, and the water in the toilets (which did not flush adequately) and sinks was contaminated, which caused "nausea and sickness." Doc. 4 at 13. Averhart had no access to a law library and very limited access to a law clerk. Doc. 4 at 13. Despite Alabama Department of Corrections' rules and regulations to the contrary, inmates were forced to live with two men in a cell; and, if they refused, they were "jumped on" and then forced to live with two men in a cell

---

[1] *See, e.g.*, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 764 & n.12 (2010); *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (stating that, with a few exceptions, the United States Supreme Court "has held that the Fourteenth Amendment's Due Process Clause incorporates the protections contained in the Bill of Rights, rendering them applicable to the States").

for 6 months.  Doc. 4 at 14.

On or around September 10, 2021, Averhart was forced to move from a single occupancy cell into a cell with another inmate, in violation of Alabama Department of Corrections' administrative rules and regulations.  Doc. 4 at 14.  Averhart asked Defendant Captain Joshua why he had to move, to which Joshua responded that Averhart did not "run his prison" and that Averhart would move wherever Joshua said to move.  Doc. 4 at 14.

On or around September 27, 2021, Averhart woke up and heard his cellmate talking to Defendant Officer Dwight Williams.  Doc. 4 at 14.  Averhart's cellmate claimed that he and Averhart were "having problems" (Averhart states that this was "untrue").  Doc. 4 at 14.  The cellmate repeatedly stated, "I'm ready, I'm ready."  Doc. 4 at 14.  Officer Williams instructed Averhart to come to the door and then handcuffed Averhart, but Williams did not handcuff Averhart's cellmate.  Doc. 4 at 14.  As soon as Averhart was handcuffed, his cellmate attacked and beat him unconscious, while Williams stood by and did nothing.  Doc. 4 at 14.  Averhart awoke at UAB Hospital with multiple injuries.  Doc. 4 at 14.

Averhart alleges that correctional officers at Donaldson are "gang members," and that they pay inmate gang members to jump or stab other inmates.  Doc. 4 at 14.  Averhart alleges that Captain Joshua had a role in the alleged inmate assault because Joshua told Averhart that Averhart "will not be safe" even in a single occupancy

cell.  Doc. 4 at 14.

Averhart wrote to various prison officials about his grievances, but none of them responded.  Doc. 4 at 14.

## DISCUSSION

To state a claim for relief under § 1983, a plaintiff must allege an act or omission that deprived him of a right, privilege, or immunity protected by the federal constitution or laws, which was committed by a person acting under color of state law.  *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).  For the reasons explained below (and at this stage), Plaintiff Averhart has sufficiently stated a claim under the Eighth Amendment against Officer Williams and Captain Joshua related to the alleged inmate assault.  But Averhart's other allegations "fail[] to state a claim upon which relief may be granted."  *See* 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2)(B).

### I. Averhart's Eighth Amendment claims against Officer Williams and Captain Joshua should proceed.

Averhart's Eighth Amendment claims against Officer Williams and Captain Joshua should proceed to the special report stage.  Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Prison officials "in a position to take steps" that could prevent a prisoner-on-prisoner attack must do so.  *Rodriguez v. Secretary for Dept. of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007) (quotation marks omitted).  "A prison official violates the Eighth Amendment when

he actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." *Id.* at 617.

Accepting Averhart's allegations as true (and liberally construing those allegations), Averhart has sufficiently alleged facts that Defendants Williams and Joshua violated his Eighth Amendment rights by failing to protect him from the alleged inmate assault. Averhart alleges that Officer Williams handcuffed him and allowed Averhart's cellmate to beat him unconscious. Doc. 4 at 14. Averhart also alleges that Captain Joshua told Averhart that he would not be safe and had a role in the alleged inmate assault. Doc. 4 at 14.

Thus, Averhart has alleged that Defendants Williams and Joshua knew that Averhart faced a substantial risk of serious harm, and disregarded that risk by failing to respond in a reasonable manner. *See Rodriguez*, 508 F.3d at 617. Consequently, Averhart's claims against Defendants Williams and Joshua for violations of his Eighth Amendment rights should proceed.

**II. Averhart's allegations against Warden Givens, Warden Morgan, Warden Peters, Captain Scott, and Sergeant Edmond fail to state a claim upon which relief can be granted.**

Averhart's complaint fails to state a claim upon which relief can be granted against Warden Givens, Warden Morgan, Warden Peters, Captain Scott, and Sergeant Edmond, and the court should dismiss those claims. Averhart's complaint

includes no specific factual allegations against these Defendants other than allegations that they are "responsible for the operation [at Donaldson] and for the welfare of all inmates." Doc. 4 at 12. Averhart's complaint also includes general allegations about unsafe and unsanitary living conditions in the segregation unit and about a lack of access to legal services. Doc. 4 at 13–14. Averhart requests further that Warden Givens and Warden Morgan "provide inmates in these cells lights, shower on correct days and have more security checks, cell to cell." Doc. 4 at 15.

**A.**  **The allegations in Averhart's complaint fail to state a claim for supervisory liability against Warden Givens, Warden Morgan, Warden Peters, Captain Scott, and Sergeant Edmond related to the alleged inmate assault.** Liberally construed, Averhart's complaint alleges that these Defendants had supervisory authority over Donaldson or the segregation unit and consequently should be liable for failing to prevent the alleged inmate assault. *See* Doc. 4.

In the Eleventh Circuit, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation and quotation marks omitted). To hold a supervisor liable for a constitutional violation, a plaintiff must show either that the supervisor personally participated in the unconstitutional conduct, or that a causal connection exists between the supervisor's actions and the alleged constitutional violation. *Piazza v.*

*Jefferson Cty., Ala.*, 923 F.3d 947, 957 (11th Cir. 2019) (citation and quotation marks omitted).

A plaintiff can establish a causal connection where (1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so, (2) a supervisor's "custom or policy" results "in deliberate indifference to constitutional rights," or (3) "facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Harrison*, 746 F.3d at 1298 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).

"The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) (citation and quotation marks omitted). Averhart does not allege any facts that Warden Givens, Warden Morgan, Warden Peters, Captain Scott, or Sergeant Edmond knew or should have known that Averhart faced danger from his cellmate (or otherwise), or that some prison officials allegedly paid gang member inmates to attack other inmates. Nor does the single alleged inmate assault, standing alone, constitute an allegation of "widespread abuse" such that Warden Givens, Warden Morgan, Warden Peters, Captain Scott, or Sergeant Edmond should have known of

the need to take action but failed to do so. *See Harrison*, 746 F.3d at 1298.

Averhart does not allege that any of these Defendants implemented a custom or policy resulting in deliberate indifference to his safety. Nor does Averhart allege that any of these Defendants directed their subordinates to act unlawfully, or knew that their subordinates would act unlawfully and failed to stop them from doing so. *See Harrison*, 746 F.3d at 1298.

Accordingly, Averhart has failed to sufficiently allege any claim for supervisory liability. *See Harrison*, 746 F.3d at 1298.

**B.**     **The allegations in Averhart's complaint fail to state a claim against Warden Givens, Warden Morgan, Warden Peters, Captain Scott, and Sergeant Edmond related to his conditions of confinement.** Averhart alleges that his conditions of confinement in segregation were constitutionally inadequate because the cells lacked light and heat, the beds had thin mattresses, the food was served on unsanitary trays, and the ventilation and plumbing were insufficient. Doc. 4 at 13.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer*, 511 U.S. at 832 (citation and quotation marks omitted). The Eighth Amendment requires that prison officials provide "humane conditions of confinement." *Id.*

A court applies a two-prong inquiry to analyze an Eighth Amendment challenge to conditions of confinement. *Thomas v. Bryant*, 614 F.3d 1288, 1303–04

(11th Cir. 2010). The first prong is an objective inquiry into whether the conditions are "sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities." *Id.* at 1304 (quotation marks omitted). To meet the first prong, an inmate must show an "'extreme deprivation' violating contemporary standards of decency." *Id.* at 1306–07. The second prong is a subjective inquiry into whether "the official had a sufficiently culpable state of mind." *Id.* (quotation marks omitted). Only "subjective deliberate indifference to the substantial risk of serious harm caused by such conditions" can satisfy this prong. *Id.* at 1307.

For a defendant officer to be "deliberately indifferent" to a substantial risk of serious harm, the "prison official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993). The plaintiff "must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Id.* at 1536 (quotation marks omitted).

Assuming without deciding that the conditions that Averhart alleges could qualify as extreme deprivations violating contemporary standards of decency, Averhart's complaint includes no allegations that could meet the second, subjective prong necessary to prove liability related to conditions of confinement. *See Thomas*, 614 F.3d at 1306–07. Averhart fails to allege that Warden Givens, Warden Morgan,

Warden Peters, Captain Scott, and Sergeant Edmond had any knowledge of a risk of serious harm to Averhart, or any knowledge of the means to cure the allegedly inadequate conditions. *See id.* at 1307; *LaMarca*, 995 F.2d at 1535. Thus, Averhart has not adequately alleged a claim related to his conditions of confinement.

**C.** <u>The allegations in Averhart's complaint fail to state a claim based on violations of internal administrative rules and regulations.</u> Averhart alleges that his rights were violated because placing two men in a segregation cell violated Alabama Department of Corrections' administrative rules and regulations. Doc. 4 at 14.

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988). Violation of an administrative rule or regulation, standing alone, does not support a constitutional claim. *See Sandin v. Conner*, 515 U.S. 472, 484–86 (1995) (reasoning that prison regulations are "primarily designed to guide correctional officers in the administration of a prison," and that "such regulations are not designated to confer [constitutional] rights on inmates"); *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (holding that, without more, the fact that a governmental agency's regulations or procedures may have been violated does not raise a constitutional issue).

Averhart's allegations about the administrative rules or regulations against placing two inmates in one segregation cell provide no grounds for a constitutional

claim pursuant to § 1983, and Averhart cannot state a claim related to those rules or regulations.

**D.**     The allegations in Averhart's complaint fail to state a claim related to his right of access to the courts.  Averhart alleges that his constitutional rights were violated because he had insufficient access to the law library and Donaldson did not have anyone to help inmates with "law work." Doc. 14 at 13. "Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003).  To pass constitutional muster, access to the courts must be more than merely formal; it must also be adequate, effective, and meaningful.  *Id.*

The right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (abrogated on other grounds).  However, there is not "an abstract, freestanding right to a law library or legal assistance," but rather a right to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quotation marks omitted).

To bring a claim based on the right of access to the courts, an inmate "must

13

show actual injury in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998). The impairment of any other "litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* To show actual injury, the inmate must show that shortcomings in the law library or legal assistance program "hindered his efforts to pursue a legal claim"—"for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known." *Lewis*, 518 U.S. at 351.

Here, Averhart's complaint includes only bare allegations of inadequate access to legal services. Averhart does not allege that the purported lack of access caused him any actual injury by hindering his efforts to pursue a specific legal claim. *See Wilson*, 163 F.3d at 1290; *Lewis*, 518 U.S. at 351. Thus, Averhart has not adequately alleged that his right of access to the courts was violated. *See Lewis*, 518 U.S. at 351.

## RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the court **REFER** back to the undersigned for further proceedings consistent with this report Plaintiff Averhart's Eighth Amendment claims against Defendants Officer Williams

and Captain Joshua.

In addition, the undersigned **RECOMMENDS** that the court **DISMISS WITHOUT PREJUDICE** Averhart's claims against Defendants Warden Givens, Warden Morgan, Warden Peters, Captain Scott, and Sergeant Edmond, pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2), for failure to state a claim upon which relief can be granted.

## NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days**. The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review

of the relevant portions of the report and recommendation and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings of fact and recommendations. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

**DONE** this February 2, 2023.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE