FILED

2024 Jun-20  AM 11:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

RODNEY D. AVERHART,                )
                                   )
   Plaintiff,                      )
                                   )
v.                                 )    Case No. 2:21-cv-01652-CLM-NAD
                                   )
CAPTAIN JOSHUA, et al.,            )
                                   )
   Defendants.                     )

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Rodney D. Averhart filed an amended *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights while incarcerated at the Donaldson Correctional Facility.[1]  Doc. 4.  On March 8, 2023, the court dismissed all of Averhart's claims except his Eighth Amendment claims against Defendants Captain Kenneth Joshua and Officer Dwight Williams.  Doc. 12.

In his Eighth Amendment claims against Joshua and Williams, Averhart alleges that Williams handcuffed Averhart and allowed Averhart's cellmate to assault him, and that Joshua had a role in the alleged inmate assault.  Doc. 4 at 14. Averhart seeks a declaratory judgment and compensatory and punitive damages. Doc. 4 at 15.

---

[1] Plaintiff Averhart now is incarcerated at the Limestone Correctional Facility.  *See* Doc. 9.

1

Consistent with the usual practices of this court, this matter was referred for a preliminary report and recommendation. *See* 28 U.S.C. § 636(b)(1); *McCarthy v. Bronson*, 500 U.S. 136 (1991); N.D. Ala. Local Rule 72.1. For the reasons stated below, the court should grant Defendants' motion for summary judgment (Doc. 26).

## BACKGROUND

### A.      Factual background

#### 1.      Averhart's sworn allegations

In his amended complaint (Doc. 4), Averhart alleges the following: Averhart was incarcerated at Donaldson at all relevant times. Doc. 4 at 11. On or about September 10, 2021, non-party correctional officers forced Averhart to move from a single-man cell into a cell with another inmate. Doc. 4 at 14. Averhart asked Joshua why he had to move, to which Joshua responded that Averhart did not "run his prison." Doc. 4 at 14. Joshua added that Averhart would move wherever Joshua said to move. Doc. 4 at 14.

On September 27, 2021, Averhart woke up and heard his cellmate, Markus Faggart, talking to Williams. Doc. 4 at 14; *see* Doc. 26-1 at 1. Faggart stated that he and Averhart were "having problems," which Averhart alleges was "untrue." Doc. 4 at 14. Averhart heard Faggart repeatedly say to Williams, "I'm ready, I'm ready." Doc. 4 at 14. Williams instructed Averhart to come to the cell door to be handcuffed; Williams then handcuffed Averhart, but did not handcuff Faggart. Doc. 4 and 14.

As soon as Averhart was handcuffed, Faggart attacked him, and knocked him unconscious.  Doc. 4 at 14; *see* Doc. 30 at 2.  Williams "stood there until [Averhart] passed out." Doc. 4 at 14.  Averhart woke up at UAB Hospital with multiple injuries. Doc. 4 at 14.

Averhart alleges that correctional officers at Donaldson are "gang members," and that they pay inmate gang members to "jump" or stab other inmates.  Doc. 4 at 14.

Averhart alleges that Joshua had a role in Faggart's assault because Joshua told Averhart that Averhart "will not be safe" even in a single occupancy cell.  Doc. 4 at 14.  Averhart alleges that Joshua was "legally over [the] segregation unit and responsible for the operation and for the welfare of all inmates in segregation."  Doc. 4 at 12.

In his response to Defendants' summary judgment motion, Averhart asserts that Williams handcuffed him before Faggart attacked, and that Averhart could not have fought Faggart because he was handcuffed.  Doc. 30 at 3.  Averhart asserts that he told Joshua that he was "concerned for his physical safety and well being in a two man cell."  Doc. 30 at 3.

### 2.    Defendants' factual responses

Defendants submitted several exhibits with their special report, including an Alabama Department of Corrections (ADOC) incident report from September 27,

2021 (Doc. 26-1), a body chart of Averhart from September 27, 2021 (Doc. 26-2), Averhart's medical records related to the alleged incident (Doc. 26-3), a use of force investigative report from September 27, 2021 (Doc. 26-4), a use of force audit report (Doc. 26-5), and a sworn affidavit from Joshua (Doc. 26-6).

Defendants also submitted a statement from Williams (Doc. 26-7), which the court should ignore because it is unsworn. *See* Doc. 26 at 4 n.2; *see also Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment.").

According to Joshua's affidavit and other evidence submitted by Defendants, Averhart was housed in the D Dormitory, pending disciplinary action for assault on prison staff. Doc. 26-6 at 1. On September 27, 2021, Williams approached Averhart's cell while conducting a bed roster and security check. Doc. 26-1 at 1. Williams saw Averhart and Faggart fighting. Doc. 26-1 at 1; Doc. 26-6 at 1–2. Williams ordered them to stop fighting, and when neither man complied with Williams' order Williams sprayed a one-second burst of Sabre Red into the cell. Doc. 26-6 at 1. Williams then radioed for a supervisor, and a non-party sergeant responded. Doc. 26-1 at 1. The sergeant also ordered the men to stop fighting, and again neither man complied. Doc. 26-1at 1. The sergeant then ordered another officer to spray another one-second burst of Sabre Red into the cell. Doc. 26-1 at 2. After that, Averhart and Faggart complied with the instruction to stop fighting; they

4

both were handcuffed and escorted to the infirmary for medical treatment.  Doc. 26-1 at 1, 2;  Doc. 26-6 at 2.

According to his September 27, 2021 body chart, Averhart reported that his "cellmate jumped on [him] while [he] was asleep because he owe[d] [Averhart] money."  Doc. 26-2.

Joshua avers that the D Dormitory where Averhart was housed contains only two-man cells, and that because he was not the captain over the dormitory he did not have the authority to make any housing decisions.  Doc. 26-6 at 1–2.  Joshua denies having ever participated in or associated with any gang.  Doc. 26-6 at 2.  Joshua also avers that he does not remember telling Averhart that he "does not run his prison" or that Averhart "will not be safe in a one-man cell."  Doc. 26-6 at 2.

The only injury documented in Averhart's body chart was swelling on the side of his head.  Doc. 26-2.  Because of that injury, Averhart was taken by ambulance to UAB Hospital's emergency room for further evaluation.  Doc. 26-1 at 1.  Hospital records show that Averhart was diagnosed with a subdural hematoma, a left zygomaticomaxillary complex fracture, and an ear laceration, which was repaired. Doc. 26-3 at 1–2, 5.  Once Averhart was considered stable, he was discharged with medications.[2]  Doc. 26-3 at 2.

---

[2] The UAB Hospital medical records do not show that Averhart was unconscious when he arrived at the hospital.  *See, e.g.*, Doc. 26-3 at 4.

The facts in the use of force report are consistent with the facts in the incident and duty officer reports. Doc. 26-4. The use of force report includes the statement that the investigating officer "interviewed all parties involved" and found the use of Sabre Red to be justified based on the inmates' failure to comply with the order to stop fighting. Doc. 26-4.

### B.    Procedural background

Averhart filed his initial complaint (Doc. 1), which he later amended (Doc. 4). In response to an order for special report (Doc. 13), Joshua and Williams filed a special report, supported by an affidavit and other evidence. Doc. 26.

The parties were notified that the special report would be construed as a summary judgment motion, and Averhart was notified that he had 21 days to respond to the summary judgment motion by filing affidavits or other materials. Doc. 27. Averhart also was advised of the consequences of any failure to respond or to comply with Federal Rule of Civil Procedure 56. Doc. 27; *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).

The court received a motion for extension of time from Averhart (Doc. 28), which had been mistakenly mailed to the United States District Court for the Southern District of Alabama (*see* Doc. 28 at 4). Averhart's motion was granted, allowing him until December 12, 2023, to file a response. Doc. 29. On January 5,

6

2024, the court received Averhart's response, dated December 10, 2023. Doc. 30.[3]

That response has been considered as if timely filed. In his response, Averhart

asserts that he is alleging claims against Joshua and Williams only in their individual

capacities. Doc. 30 at 2.[4]

###    C.    Legal background—Eighth Amendment

The Eighth Amendment, which is made applicable to the states by the

Fourteenth Amendment, prohibits deliberate indifference to an inmate's health or

safety. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). That protection

"imposes a duty on prison officials" to "take reasonable measures to guarantee the

safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099

(11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (alterations

omitted). This includes a duty to protect prisoners from violence by other prisoners.

*Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016). But

"not every instance of inmate on inmate violence 'translates into constitutional

liability for prison officials responsible for the victim's safety.'" *Terry v. Bailey*,

376 F. App'x 894, 895 (11th Cir. 2010) (quoting *Farmer*, 511 U.S. at 833–34)).

---

[3] On June 13, 2024, Averhart filed a second, substantially similar response. Doc. 31.

[4] Any claim against Joshua and Williams in their official capacities would be barred by the Eleventh Amendment anyway. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524–25 (11th Cir. 1990); *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 573, 1575 (11th Cir. 1994).

"[A] prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if the official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citations and quotation marks omitted). In this regard, a prison official violates the Eighth Amendment "when a substantial risk of serious harm, *of which the official is subjectively aware*, exists and the official does not respond reasonably to the risk." *Caldwell*, 748 F.3d at 1099 (quoting *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)) (emphasis in original).

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To avoid summary judgment, the nonmovant must go beyond the allegations to offer specific facts that create a genuine dispute for trial. *Celotex*, 477 U.S. at 324–25. The court's job is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477

8

U.S. at 249. The court must construe all evidence and draw all reasonable inferences in favor of the nonmovant. *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c).

In addition, when ruling on a defendant's summary judgment motion, the court must consider any "specific facts" that a *pro se* plaintiff pleaded in his sworn complaint. *See Caldwell*, 748 F.3d at 1098 (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). The court liberally construes a *pro se* pleading. *See, e.g.*, *Jones v. Florida Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015) (the court should hold a *pro se* pleading to "a less stringent standard than a pleading drafted by an attorney").

Furthermore, the practical reality that a plaintiff's "evidence consists mainly of his own testimony in his verified complaint, sworn response, and sworn affidavit does not preclude a finding that a genuine dispute of material fact exists." *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019). And, "[e]ven if his sworn statements turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact" for trial. *Id.* at 1209. When ruling on a summary judgment motion, a court cannot make credibility determinations. *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006).

9

## DISCUSSION

**I.    The court should grant Defendants' summary judgment motion on Averhart's Eighth Amendment failure to protect claim.**

The court should grant Defendants summary judgment on Averhart's Eighth Amendment failure to protect claim.  Averhart has not alleged any fact or identified any evidence that could support a finding or reasonable inference that either Joshua or Williams knew that Averhart faced a substantial risk of serious harm from Faggart.

To avoid summary judgment on a failure to protect claim, "a plaintiff must satisfy three elements." *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021).  First, the plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 1358.  Second, the plaintiff must show that the defendant prison official had a "sufficiently culpable state of mind" rising to the level of "deliberate indifference." *Id.*   Third, the plaintiff must demonstrate causation—i.e., that the constitutional violation caused his injuries. *Id.*

For the first element (that is, a "substantial risk of serious harm"), a plaintiff must show extreme conditions that "posed an unreasonable risk of serious injury to his future health or safety." *Marbury*, 936 F.3d at 1233.  In considering this first element, the court uses an objective standard. *Caldwell*, 748 F.3d at 1099.

The second element—that is, deliberate indifference—requires that "the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of

10

serious harm and that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." *Mosley v. Zachery*, 966 F.3d 1265, 1270–71 (11th Cir. 2020) (alterations in original). So, at a minimum, a prisoner must show that a defendant subjectively was aware of facts from which the defendant could have inferred that there was a substantial risk of serious harm, and that the defendant actually drew the inference; and "[o]bjectively, the official must have responded to the known risk in an unreasonable manner," by knowingly or recklessly declining to reduce that risk, despite knowledge regarding how to do so. *Marbury*, 936 F.3d at 1233.

Then, on the third element (i.e., causation), a plaintiff must show a "causal link" between a defendant's "failure to act reasonably and the plaintiff's injury." *Id*.

Furthermore, "deliberate indifference describes a state of mind more blameworthy than negligence," and an "ordinary lack of due care for the prisoner's interest or safety" will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 835. A "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983." *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

Instead, a prison official must possess enough information about a safety threat to an inmate that the information enables him to conclude that the threat presents a "strong likelihood" of injury, not a "mere possibility." *Brooks v. Warden*,

11

800 F.3d 1295, 1301 (11th Cir. 2015) (quoting *Brown v. Hughes*, 894 F.2d at 1537). In addition, a plaintiff must identify facts to show an excessive risk of injury from a specific source (*see, e.g.*, *Marbury*, 936 F.3d at 1236), or a prison where inmate-on-inmate "violence and terror reign" and the "threat of violence" is "constant" (*Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga*, 400 F.3d 1313, 1320 (11th Cir. 2005) (citation omitted)).   However, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment."   *Purcell*, 400 F.3d at 1320 (citing *Woodhous v. Com. of Va.*, 487 F.2d 889, 890 (4th Cir. 1973)).   Indeed, the Eleventh Circuit has recognized that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."   *Marbury*, 936 F.3d at 1236.

Moreover, a defendant can avoid Eighth Amendment liability where the defendant can show that he "did not know of the underlying facts indicating a sufficiently substantial danger" and was "therefore unaware of a danger," or that he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," or that he "responded reasonably to the risk, even if the harm ultimately was not averted."   *Rodriguez v. Secretary for Dep't of Corr.*, 508 F.3d 611, 617–18 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 844).

## A.    Joshua

Construing all allegations, evidence, and reasonable inferences in Averhart's favor, Averhart has not identified a sufficient fact basis to support a failure to protect claim against Joshua.  Averhart alleges that Joshua "was part of [him] getting jumped on" because Joshua "once stated" that Averhart "will not be safe" even in a one-man cell.  Doc. 4 at 14.  That vague, general statement does not support a finding or reasonable inference that Joshua actually, subjectively knew that Averhart faced a substantial risk of serious harm from Faggart, or that Joshua disregarded any such known risk from Faggart and failed to respond to it in an objectively reasonable manner.  *See Mosley*, 966 F.3d at 1270–71; *accord Carter*, 352 F.3d at 1350 (holding that a "generalized awareness of risk . . . does not satisfy the subjective awareness requirement").  And a "[m]erely negligent failure to protect an inmate from attack does not justify liability under 1983."  *Brown v. Hughes*, 894 F.2d at 1537.

Among other things, Averhart does not allege that he notified Joshua, Williams, or any other prison official of any risk that Faggart would attack Averhart.  Averhart does not allege that he notified Joshua or anyone else of any previous incident with Faggart or threat made by Faggart from which Joshua could have inferred that Averhart faced a substantial risk of serious harm before the alleged assault on September 27, 2021.[5]

---

[5] According to Averhart's September 27, 2021 body chart, Averhart stated that

Rather, Averhart's conclusory allegations against Joshua (i.e., that Averhart believes Joshua was involved in Faggart's attack because Joshua once told him that he would not be safe in a one-man cell), as well as the vague assertion that Averhart told Joshua that he was "concerned for his physical safety and well being in a two man cell" (Doc. 30 at 3), do not provide a sufficient basis for a trier of fact to find or reasonably infer that Joshua had the actual knowledge required for Eighth Amendment liability. *See, e.g.*, *Caldwell*, 748 F.3d at 1099 (reasoning that the Eighth Amendment requires that a defendant "actually (subjectively) knew that an inmate [faced] a substantial risk of serious harm"); *Goodman*, 718 F.3d at 1334 (holding that the plaintiff "adduced no evidence that either [defendant] was subjectively aware of the peril to which [the plaintiff] was exposed on the night in question and that failure is fatal to his claim").

**B.    Williams**

Likewise, Averhart has not alleged any fact or identified any evidence that could support a finding or reasonable inference that Williams knew that Averhart faced a substantial risk of serious harm from Faggart. Averhart alleges that, before Williams handcuffed him, Averhart heard Faggart tell Williams, "I'm ready, I'm ready." Doc. 4 at 14. Averhart also asserts that Faggart attacked Averhart as soon

---

Faggart "jumped on [him] while [he] was asleep because Faggart owe[d] [Averhart] money." Doc. 26-2.

14

as Williams had handcuffed Averhart. Doc. 30 at 2. Averhart asserts further that Williams handcuffed him by having Averhart place his hands behind his back and through the meal tray slot in the cell door. Doc. 30 at 2. So, when Faggart allegedly attacked Averhart, Williams was outside of the locked cell. Doc. 30 at 2.

Averhart appears to suggest that Williams and Faggart had planned for Faggart to attack Averhart, alleging that correctional officers are "gang members," and that they pay inmate gang members to "jump" or stab other inmates. Doc. 4 at 14. But the ambiguous and speculative allegations that Faggart said he was "ready" and that officers are gang members who pay inmate gang members to "jump" other inmates are insufficient to support any finding or reasonable inference that Williams knew Faggart posed any risk to Averhart—much less that Williams planned for Faggart to attack Averhart. *See Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) ("Conclusory allegations and speculation are insufficient to create a genuine issue of material fact."); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (holding that "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment").

## C.    Conspiracy

Moreover, to prove a claim for conspiracy under § 1983, a plaintiff must show "that (1) the defendants reached an understanding or agreement that they would deny

the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1327 (11th Cir. 2015).

As discussed above, Averhart alleges that correctional officers are gang members, and that they pay inmate gang members to "jump" or stab other inmates. Doc. 4 at 14. Averhart alleges that Joshua had a role in the alleged inmate assault because Joshua once told Averhart that he "will not be safe," even in a one-man cell. Doc. 4 at 14.

With respect to any conspiracy claim, Averhart has not alleged facts or identified any evidence based on which a trier of fact reasonably could find or infer any understanding or agreement between Joshua and Williams with regard to the alleged inmate assault. *See Weiland*, 792 F.3d at 1327. In this regard, Averhart's sworn fact allegations are not "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II. The court should grant Defendants' summary judgment motion on Averhart's Eighth Amendment failure to intervene claim against Williams.

The court should grant Defendants summary judgment on Averhart's Eighth Amendment failure to intervene claim against Williams. Like a claim for failure to protect (*see supra* Part I), a claim for failure to intervene also requires the plaintiff to show a defendant's deliberate indifference to a substantial risk of serious harm.

16

*See Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (discussing the application of the deliberate indifference standard to a failure to intervene claim). "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." *Terry*, 376 F. App'x at 896 (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim . . . can be held liable for his nonfeasance." *Velasquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) (citation omitted).

Importantly, to establish a failure to intervene claim, a plaintiff must show that the defendant was "in a position to intervene" yet "failed to do so." *Williams v. Radford*, 64 F.4th 1185, 1199 (11th Cir. 2023); *see Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008)).[6]

Here, Averhart has not alleged any fact or identified any evidence from which a trier of fact reasonably could find or infer that Williams "was in a position to intervene yet failed to do so." *Hadley*, 526 F.3d at 1331. Even construing the

---

[6] *See Jordan v. Georgia*, 2022 WL 4389006, at *3 (11th Cir. Sept. 22, 2022) (recognizing that the Eleventh Circuit has "not addressed the question of an officer's duty to intervene in an inmate-on-inmate attack," but appearing to approve the various district courts' use of the same standards as with officer-on-inmate claims, and reasoning that in either case the non-intervening officer "must have had a realistic chance to intervene and act in time, in order to have violated his duty to intervene").

allegations, evidence, and reasonable inferences in Averhart's favor, Williams was outside of Averhart and Faggart's locked cell when Faggart attacked Averhart. Averhart does not dispute that Williams ordered Faggart and Averhart to stop fighting, or that both men failed to comply with that order. *See* Doc. 30. Nor does Averhart dispute that Williams then deployed his Sabre Red in an attempt to stop the fight and then called for assistance in stopping the fight. *See* Doc. 30.

At bottom (even liberally construed), Averhart alleges only that he heard Faggart tell Williams, "I'm ready, I'm ready," that Williams handcuffed Averhart, and that Faggart then attacked Averhart while Williams was outside of the cell. Doc. 4 at 14. Without more, it would be unreasonable to infer that Williams did not "take reasonable steps" in attempting to stop the fight (*see Velasquez*, 484 F.3d at 1341), or that Williams more quickly could have stopped the fight between Faggart and Averhart (*see Williams*, 64 F.4th at 1199). And (as discussed above, *see supra* Part I), any assertion that Williams intended for Faggart to attack Averhart would be impermissibly speculative—e.g., Averhart's assertion that he could not have been fighting Faggart because Williams already had handcuffed him. Doc. 30 at 3; *see Valderrama*, 780 F.3d at 1112 ("Conclusory allegations and speculation are insufficient to create" a fact issue for trial); *see also Campbell v. Air Jamaica*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (liberal treatment of pro se pleadings "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise

18

deficient pleading in order to sustain an action").

A "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983" (*Goodman*, 718 F.3d at 1332); and, without more, there can be no constitutional liability for Williams' alleged failure to have taken additional steps to stop Faggart's attack on Averhart.  Averhart has not alleged that the circumstances would have allowed Williams to stop the attack without assistance, or that the attack persisted long enough that Williams should have been able to reasonably intervene.  *See, e.g.*, *Ledlow*, 500 F. App'x at 914 (affirming summary judgment for the defendant correctional officer, where the plaintiff argued that the defendant officer "did not intervene," but "presented no evidence that [the defendant officer] had the ability to reasonably insert himself between [the plaintiff] and [his attacker] to stop the assault without additional help," and had not presented "evidence . . . as to how long this assault went on before intervention occurred"); *Terry*, 376 F. App'x at 896 (affirming the dismissal of a failure to intervene claim in relevant part because the plaintiff alleged that "some prison officers were outside of the cubicle area where the altercation took place and merely watched [the plaintiff] and [another inmate] fight, but [the plaintiff] d[id] not allege facts indicating that the duration of the fight or the position of the guards were such that the guards would have been in a 'position to intervene'"); *Johnson v. Lang*, 2022 WL 2734421, at *5 (11th Cir. July 14, 2022) (holding that summary judgment was appropriate, where

19

the plaintiff's sworn complaint "contained no information about how long the attack lasted or how much of it [the defendant] witnessed").[7]

## RECOMMENDATION

For the reasons stated above, this report **RECOMMENDS** that the court **GRANT** Defendants' summary judgment motion (Doc. 26).

## NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days.** The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

---

[7] Averhart has not created a genuine dispute of material fact for trial on the alleged constitutional violations, so the court need not address qualified immunity. *See* Doc. 26 at 7.

20

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings of fact and recommendations. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

**DONE** this June 20, 2024.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE

21